UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC MAHANEY, RICHARD PITNEY, ELIJAH NAYLOR, and SHAWN NEARY, Individually and on behalf of other similarly situated individuals,<br>　　　　　　　　　　　　Plaintiffs | : CIVIL ACTION NO<br>:<br>:<br>:<br>:<br>: |
| v. | : AUGUST 7, 2007 |
| C&S WHOLESALE GROCERS, INC., and THE "XYZ" PLAN ADMINISTRATOR,<br>　　　　　　　　　　　　Defendants | :<br>:<br>:<br>:<br>: |

## VERIFIED COMPLAINT

INTRODUCTION

1.  This is an action for money damages, liquidated damages, costs, attorneys' fees, injunctive relief, and other relief as a result of Defendants' violation of federal and state laws including but not limited to the Defendants' failure to pay compensation and certain retirement benefits due Plaintiffs, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* This is further an action for violation of the applicable wage and hour laws and regulations set forth in Connecticut Minimum Wage Act ("CMWA"), codified as C.G.S. § 31-58 *et seq.*

2.  With respect to the ERISA and CMWA claims, Plaintiffs bring this action as a class action on behalf of similarly situated individuals pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

1

3. With regard to the claims brought under the FLSA, this action is brought pursuant to the opt-in collective action provisions of the Fair Labor Standards Act. This is an appropriate collective or representative action under 29 U.S.C. § 216(b), sometimes referred to as an "opt-in" class action.

4. In addition, and in the alternative, Plaintiffs bring this as an individual action.

PARTIES

5. Plaintiff Eric Mahaney is an individual presently residing in Springfield, Massachusetts. At all times relevant to this complaint, Plaintiff Mahaney has worked for Defendant C&S Wholesale Grocers, Inc. as a "high-lo" lift operator and "selector" at Defendant C&S's Windsor Locks, Connecticut facility and was employed at the Windsor Locks facility. During his employment with Defendant C&S, Plaintiff Mahaney was a piece-rate incentive employee who periodically worked more than 40 hours per week.

6. Plaintiff Elijah Naylor is an individual presently residing in Springfield, Massachusetts. At all times relevant to this complaint, Plaintiff Naylor has worked for Defendant C&S Wholesale Grocers, Inc. as a "trainer" and "selector" at Defendant C&S's Windsor Locks, Connecticut facility. During his employment with Defendant C&S, Plaintiff Naylor has been a piece-rate incentive employee who periodically worked more than 40 hours per week.

7. Plaintiff Richard Pitney is an individual presently residing in Windsor Locks, Connecticut. At all times relevant to this complaint, Plaintiff Pitney has worked for Defendant C&S Wholesale Grocers, Inc. as a "high-lo" lift operator and "selector" at Defendant C&S's Windsor Locks, Connecticut facility and remains employed at the

Windsor Locks facility. During his employment with Defendant C&S, Plaintiff Pitney has been a piece-rate incentive employee who periodically worked more than 40 hours per week.

8. Plaintiff Shawn Neary is an individual presently residing in Plainville, Connecticut. At all times relevant to this complaint, Plaintiff Neary has worked for Defendant C&S Wholesale Grocers, Inc. as a "high-lo" lift operator and "selector" at Defendant C&S's Windsor Locks, Connecticut facility. During his employment with Defendant C&S, Plaintiff Neary has been a piece-rate incentive employee who periodically worked more than 40 hours per week.

9. Defendant C&S Wholesale Grocers, Inc. ("Defendant C&S"), is a Corporation organized under the laws of the State of Vermont and having its principal place of business in Keene, New Hampshire. Defendant is an entity that transacts business within the State of Connecticut. At all times relevant to this action, Defendant C&S has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

10. Upon information and belief, the Defendant C&S maintains and operates large grocery warehouse storage facilities throughout the United States.

11. Defendant "XYZ" Plan Administrator is the Plan Administrator for the Defendant C&S' Retirement Plan ("Defendant Plan") in its capacity as Plan Administrator, Defendant Plan determines, inter alia, eligibility for benefits, payments of benefits, and is responsible for the reporting and disclosure requirements of ERISA. At this time, Plaintiffs are not aware of the full identity of the Defendant Plan, and Plaintiffs

intend to amend the Complaint to set forth the actual name of the Defendant Plan once the identity is ascertained in discovery.

CLASS ACTION CLAIMS

12. The aforementioned Plaintiffs bring this action on behalf of themselves and all other similarly situated employees of Defendant C&S present and former, who were and/or are affected by the actions, pay schemes, policies and procedures of the Defendants as described herein.

13. In addition, and in the alternative, the aforementioned Plaintiffs bring this action in their individual capacities, separate and apart from the class and/or collective action claims set forth herein.

14. With respect to the class claims under the FLSA, the collective action class is defined as follows:

All current and former C&S piece rate incentive workers who were subject to the following common practices or policies of the Defendant C&S:

    (a) who worked in any of Defendant C&S' facilities during the last three years (3) years; and

    (b) who worked overtime, including hours worked off-the-clock without appropriate pay, as that term is defined by the FLSA during at least one week during their employment; and

    (c) who have been denied their full and legally required wages and overtime compensation.

15. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

16. With respect to the claims brought under ERISA, Plaintiffs allege two classes. The first class is defined as follows:

4

>All current and former employees of Defendant C&S who were subject to the following common practices or policies of the Defendants C&S and Defendant Plan:
>
>>(a) who worked in any of Defendant C&S' Connecticut facilities during the last six (6) years and participated in Defendant C&S' 401k Retirement Plan as administered by Defendant Plan; and
>>
>>(b) who reported to work on at least one occasion during the past six (6) years and did not work a minimum of four (4) hours on said occasion; and
>>
>>(c) who were not compensated for a minimum of four (4) hours of pay at their regular rate; and
>>
>>(d) who, as a consequence of not receiving the minimum four (4) hours of pay, did not receive employer contributions to their retirement accounts within the Defendants C&S' 401k Retirement Plan as administered by Defendant Plan.

17. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

18. As to the class claims set forth in paragraph 16, Plaintiffs sue on behalf of themselves and all other members of the above-defined class. Class certification for the claims is appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) because all of the requirements of those Rules are met:

>23(a)(1). The class is so numerous that joinder of all members is impractical. The Defendant Plan has, on information and belief, at least hundreds of former and/or current employees and/or participants meeting the class definitions set forth above throughout the State of Connecticut. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, the Plaintiffs are informed and believe that hundreds of putative class members, if not more, have worked for the Defendant C&S and participated in the Retirement Plan administered by Defendant Plan without receiving appropriate pay as required under State and Federal law.
>
>23(a)(2). There are questions of law and fact common to the class, especially, the questions of whether the alleged practices in paragraphs 29 through 48 below exist and were applied to all class members.

5

23(a)(3).   The named Plaintiffs' claims encompass the challenged practices and course of conduct of the Defendant C&S and Defendant Plan. Furthermore, the Plaintiffs legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to whether Federal laws are violated by such conduct apply equally to the Plaintiffs and to the class.

23(a)(4).   The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs claims are not antagonistic to those of the putative class and that they have hired counsel skilled in the prosecution of class actions.

23(b)(2).   Defendant Plan has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

23(b)(3).   Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. While the individual compensatory damage suffered by each class member is not insignificant, it is not substantial enough to justify the expense and burden of individual litigation. To conduct this action as a class action under Rule 23(b)(3) presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member, and maximizes recovery to them.

19.   With respect to the second class under ERISA , the class is defined as follows:

All current and former employees of Defendant C&S who were subject to the following common practices or policies of the Defendants C&S and Defendant Plan:

   (a)   who worked in any of Defendant C&S' facilities during the last six (6) years and participated in Defendant C&S' 401k Retirement Plan as administered by Defendant Plan; and

   (b)   who worked more than forty (40) hours (including time worked off-the-clock) during at least one work week during their employment; and

   (c)   who were not compensated for overtime pay as a result thereof; and

   (d)   who, as a consequence of not receiving the overtime pay to which they were entitled, did not receive employer contributions to their retirement accounts within the Defendants C&S' 401k Retirement Plan as administered by Defendant Plan.

20. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

21. As to the class claims set forth in paragraph 19, Plaintiffs sue on behalf of themselves and all other members of the above-defined class. Class certification for the claims is appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) because all of the requirements of those Rules are met:

23(a)(1). The class is so numerous that joinder of all members is impractical. The Defendants Plan has, on information and belief, at least thousands of former and/or current employees and/or participants meeting the class definitions set forth above. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, the Plaintiffs are informed and believe that thousands of putative class members, if not more, have worked for the Defendant C&S and participated in the Retirement Plan administered by Defendant Plan without receiving appropriate wage and overtime pay under State and Federal law.

23(a)(2). There are questions of law and fact common to the class, especially, the questions of whether the alleged practices in paragraphs 29 through 48 below exist and were applied to all class members.

23(a)(3). The named Plaintiffs' claims encompass the challenged practices and course of conduct of the Defendants C&S and Defendant Plan. Furthermore, the Plaintiffs legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to whether Federal laws are violated by such conduct apply equally to the Plaintiffs and to the class.

23(a)(4). The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs claims are not antagonistic to those of the putative class and that they have hired counsel skilled in the prosecution of class actions.

23(b)(2). Defendants Plan has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

23(b)(3). Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. While the

individual compensatory damage suffered by each class member is not insignificant, it is not substantial enough to justify the expense and burden of individual litigation. To conduct this action as a class action under Rule 23(b)(3) presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member, and maximizes recovery to them.

22. With respect to the claims brought under the CMWA, Plaintiffs allege two classes

With respect to the first class, the class is defined as follows:

All current and former employees of Defendant C&S who were subject to the following common practices or policies of the Defendant:

  (a)  who worked in any of Defendant C&S' Connecticut facilities during the last two (2) years; and

  (b)  who reported to work on at least one occasion during the past two years and did not work a minimum of four (4) hours on said occasion; and

  (c)  who were subject to the State of Connecticut Department of Labor Regulation regarding "Minimum Fair Wage Rates for Persons Employed in Mercantile Trade", regulation 31-62-D1 *et seq.;* and

  (d)  who were not compensated for a minimum of four (4) hours of pay at their regular rate as required by the State of Connecticut Department of Labor regulation 31-62-D1 *et seq.*

23. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

24. As to the class claims set forth in paragraph 22, Plaintiffs sue on behalf of themselves and all other members of the above-defined class. Class certification for the claims is appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) because all of the requirements of those Rules are met:

  23(a)(1). The class is so numerous that joinder of all members is impractical. The Defendant C&S has, on information and belief, at least hundreds of former and/or current employees and/or participants meeting the class definitions set forth above throughout the State of Connecticut. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, the Plaintiffs are

8

informed and believe that hundreds of putative class members, if not more, have worked for the Defendant C&S without receiving appropriate pay under State law, specifically the State of Connecticut Department of Labor Regulation regarding "Minimum Fair Wage Rates for Persons Employed in Mercantile Trade", regulation 31-62-D1 *et seq.*

23(a)(2). There are questions of law and fact common to the class, especially, the questions of whether the alleged practices in paragraphs 29 through 48 below exist and were applied to all class members.

23(a)(3). The named Plaintiff's claims encompass the challenged practices and course of conduct of the Defendants C&S. Furthermore, the Plaintiffs legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to whether the State laws are violated by such conduct apply equally to the Plaintiffs and to the class.

23(a)(4). The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs claims are not antagonistic to those of the putative class and that they have hired counsel skilled in the prosecution of class actions.

23(b)(2). Defendants C&S has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

23(b)(3). Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. While the individual compensatory damage suffered by each class member is not insignificant, it is not substantial enough to justify the expense and burden of individual litigation. To conduct this action as a class action under Rule 23(b)(3) presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member, and maximizes recovery to them.

25. With respect to the second class under the CMWA, the class is defined as follows:

All current and former C&S piece rate incentive workers who were subject to the following common practices or policies of the Defendant C&S:

(a) who worked in any of Defendant C&S' Connecticut facilities during the last two (2) years; and

(b) who have been denied their full and legally required wages and/or overtime compensation, and proper working conditions; and/or

9

    (c)    who have worked hours off-the-clock without receiving appropriate pay from Defendant C&S; and/or

    (d)    who suffered unlawful deductions from their wages, and/or

    (e)    who were not afforded proper meal and/or rest breaks.

26. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

27. As to the class claims set forth in paragraph 25, Plaintiffs sue on behalf of themselves and all other members of the above-defined class. Class certification for the claims is appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) because all of the requirements of those Rules are met:

23(a)(1). The class is so numerous that joinder of all members is impractical. The Defendants C&S has, on information and belief, at least hundreds of former and/or current employees and/or participants meeting the class definitions set forth above throughout the State of Connecticut. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, the Plaintiffs are informed and believe that hundreds of putative class members, if not more, have worked for the Defendant C&S without receiving appropriate pay under State law.

23(a)(2). There are questions of law and fact common to the class, especially, the questions of whether the alleged practices in paragraphs 29 through 48 below exist and were applied to all class members.

23(a)(3). The named Plaintiff's claims encompass the challenged practices and course of conduct of the Defendants C&S. Furthermore, the Plaintiffs legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to whether the State laws are violated by such conduct apply equally to the Plaintiffs and to the class.

23(a)(4). The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs claims are not antagonistic to those of the putative class and that they have hired counsel skilled in the prosecution of class actions.

10

23(b)(2). Defendants C&S has acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

23(b)(3). Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. While the individual compensatory damage suffered by each class member is not insignificant, it is not substantial enough to justify the expense and burden of individual litigation. To conduct this action as a class action under Rule 23(b)(3) presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member, and maximizes recovery to them.

JURSIDICTION

28. The United States District Court for the District of Connecticut has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims arising under Federal law. Supplemental jurisdiction over the State law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case and controversy.

FACTUAL BACKGROUND

29. The Defendant C&S maintains and operates large warehouse storage facilities throughout the United States for the purpose of supplying grocery products to large supermarkets throughout the United States.

30. Defendant C&S's employees in the State of Connecticut are subject to the State of Connecticut Department of Labor Regulation regarding "Minimum Fair Wage Rates for Persons Employed in Mercantile Trade", regulation 31-62-D1 *et seq*.

31. Upon information and belief, the Defendant C&S employs thousands of warehouse workers at piece-rate incentives. The workers are paid according to the amount of products they move.

11

32. Upon information and belief, these piece-rate incentive employees work in teams of 2-8 members, with their pay dependent upon the efforts of the whole team. The Defendant C&S' incentive pay scheme as applied is a system under which Defendants make unlawful deductions from the earned wages of its employees.

33. Each of the Named Plaintiffs work and/or worked primarily as "Hi-Lo" Lift Operators and "Selectors", who comprise the greatest number of incentive positions in the Defendant C&S's warehouses.

34. "Hi-Lo" Lift Operators are those employees who operate stand up forklifts equipped with computers in order to select product. "Hi-Lo" employees' primary responsibilities include, but are not limited to, using a forklift to select product, which is dropped into distribution slots for later loading onto delivery trucks. "Hi-Lo" Lift Operators are typically paid around 80 cents per pallet.

35. "Selectors" are those employees who operate sit down forklifts equipped with pallet jacks. Their primary job responsibilities include, but are not limited to, using a pallet jack to pick cases of product in accordance with customers' orders for loading onto delivery trucks. After loading, the orders are delivered to Defendant C&S's customers. "Selectors" are typically paid 7.5 cents per case.

36. Both "Hi-Lo" Lift Operators and "Selectors" are incentive based positions.

37. In the late 1980's, Defendant C&S instituted an incentive-based pay system whereby employees work in teams comprised of 2-8 individuals, with their pay dependent upon the productivity and accuracy of the entire team. The incentive-based pay system was meant to reward teams who were highly productive and accurate in their completion of customer orders.

38. In connection with the incentive-based pay system, each employee, aside from earning piece-rate wages, also maintains an "8-week average." The "8-week average" is the average weekly earning of each individual and/or team for the previous 8 weeks. The "8-week average" is used to pay employees for vacation, sick, holiday or personal time off.

39. The Defendant C&S's incentive based wage scheme punishes employees by encouraging them to work as quickly as possible through lunch and rest breaks and to work off-the-clock whenever possible in order to boost their "8-week average."

40. In addition, employees are encouraged to work non-incentive or utility pay jobs that are different from their regular positions. However, by working these other positions, the employees' "8-week average" is driven down based on Defendant C&S's unlawful pay scheme.

41. Moreover, Defendant C&S punishes workers for mistakes, injuries, tardiness, and/or absences, thereby reducing their per-pallet or per-case rate to a so-called "Disciplinary Rate."

42. Upon information and belief, Defendant C&S has made, and continues to make, unlawful wage deductions to the paychecks of its piece-rate incentive employees.

43. In addition, Defendant C&S's employees who worked in the State of Connecticut were sometimes sent home from work after reporting for a shift without working four hours. Defendant C&S failed to pay employees the required four (4) hour minimum due.

44. Defendant wrongfully lowers the amount of wages paid to its employees by wrongfully reducing their regular hourly rate.

45.  By reducing wages through penalty deductions, Defendant's actions have lowered workers' overtime pay. In using the penalty rate as the "regular hourly rate" for the purpose of calculating overtime, employees overtime rate is necessarily lower, in violation of State and Federal law.

46.  As a further consequence of not receiving the wages and overtime pay to which they were entitled, employees that participate in the Defendant's 401k Retirement Plan did not receive the full value of employer contributions to their retirement accounts.

47.  Additionally, Defendant has repeatedly failed to pay agreed wages by making mistakes in payroll calculations and failing to remedy these mistakes when brought to management's attention by employees.

48.  Defendant, through its supervisors and managers, consistently deny Plaintiffs and the putative class the opportunity to take breaks or eat meals by advising them that this time would be counted against them when determining their 8-Week Average. In essence, Plaintiffs are required to work every minute of every shift that they are scheduled to work, so as not to lower their 8-Week Average rate.

COUNT ONE    VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ. ON BEHALF OF PLAINTIFFS AND ALL SIMILARLY SITUATED EMPLOYEES, CURRENT AND FORMER AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC.

49.  Defendant C&S, during portions of the past three (3) years prior to the filing of this complaint, has failed to pay the Plaintiffs proper overtime compensation for hours worked in excess of forty (40) hours per week at a rate of one and one-half times their regular hourly rate.

50.  Defendant C&S has a policy and practice of failing and refusing to pay Plaintiffs and others similarly situated for all hours worked in violation of 29 U.S.C. §201-219.

51. Defendant C&S's policy and practice of failing to pay employees who work "off-the-clock" is specifically prohibited by 29 C.F.R. §785.11.

52. Defendants have also failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA.

53. Defendant C&S's conduct in this regard was a violation of the FLSA.

54. As a result of Defendant unlawful acts, Named Plaintiffs and all similarly situated current and former employees are being deprived of earned wages in amounts to be determined at trial. They are entitled to recover all compensatory damages for unpaid overtime and hours worked off-the-clock, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT TWO        VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ. ON BEHALF OF ERIC MAHANEY IN HIS INDIVIDUAL CAPACITY AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC.

55. Defendant C&S, during portions of the past three (3) years prior to the filing of this complaint, has failed to pay Plaintiff Eric Mahaney proper overtime compensation for hours worked in excess of forty (40) hours per week at a rate of one and one-half times their regular hourly rate.

56. Defendant C&S had a policy and practice of failing and refusing to pay Plaintiff Mahaney for all hours worked in violation of 29 U.S.C. §201-219.

57. Defendant C&S's policy and practice of failing to pay employees who work "off-the-clock" is specifically prohibited by 29 C.F.R. §785.11.

58. Defendants have also failed to make, keep, and preserve records with respect to Plaintiff Mahaney sufficient to determine his wages, hours, and other conditions and practice of employment in violation of the FLSA.

59. Defendant C&S's conduct in this regard was a violation of the FLSA.

60. As a result of Defendant C&S's unlawful acts, Plaintiff Mahaney has been deprived of earned wages in amounts to be determined at trial. He is entitled to recover all compensatory damages for unpaid overtime and hours worked off-the-clock, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT THREE     VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ. ON BEHALF OF RICHARD PITNEY IN HIS INDIVIDUAL CAPACITY AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC.

61. Defendant C&S, during portions of the past three (3) years prior to the filing of this complaint, has failed to pay Plaintiff Richard Pitney proper overtime compensation for hours worked in excess of forty (40) hours per week at a rate of one and one-half times their regular hourly rate.

62. Defendant C&S has a policy and practice of failing and refusing to pay Plaintiff Pitney for all hours worked in violation of 29 U.S.C. §201-219.

63. Defendant C&S's policy and practice of failing to pay employees who work "off-the-clock" is specifically prohibited by 29 C.F.R. §785.11.

64. Defendants have also failed to make, keep, and preserve records with respect to Plaintiff Pitney sufficient to determine his wages, hours, and other conditions and practice of employment in violation of the FLSA.

65. Defendant C&S's conduct in this regard was a violation of the FLSA.

66. As a result of Defendant C&S's unlawful acts, Plaintiff Pitney is being deprived of earned wages in amounts to be determined at trial. He is entitled to recover all compensatory damages for unpaid overtime and hours worked off-the-clock, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT FOUR	VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ. ON BEHALF OF ELIJAH NAYLOR IN HIS INDIVIDUAL CAPACITY AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC.

67. Defendant C&S, during portions of the past three (3) years prior to the filing of this complaint, has failed to pay Plaintiff Elijah Naylor proper overtime compensation for hours worked in excess of forty (40) hours per week at a rate of one and one-half times their regular hourly rate.

68. Defendant C&S has a policy and practice of failing and refusing to pay Plaintiff Naylor for all hours worked in violation of 29 U.S.C. §201-219.

69. Defendant C&S's policy and practice of failing to pay employees who work "off-the-clock" is specifically prohibited by 29 C.F.R. §785.11.

70. Defendants have also failed to make, keep, and preserve records with respect to Plaintiff Naylor sufficient to determine his wages, hours, and other conditions and practice of employment in violation of the FLSA.

71. Defendant C&S's conduct in this regard was a violation of the FLSA.

72. As a result of Defendant C&S's unlawful acts, Plaintiff Naylor is being deprived of earned wages in amounts to be determined at trial. He is entitled to recover all compensatory damages for unpaid overtime and hours worked off-the-clock,

liquidated damages, prejudgment interest, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT FIVE    VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ. ON BEHALF OF SHAWN NEARY IN HIS INDIVIDUAL CAPACITY AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC.

73. Defendant C&S, during portions of the past three (3) years prior to the filing of this complaint, has failed to pay Plaintiff Shawn Neary proper overtime compensation for hours worked in excess of forty (40) hours per week at a rate of one and one-half times their regular hourly rate.

74. Defendant C&S has a policy and practice of failing and refusing to pay Plaintiff Neary for all hours worked in violation of 29 U.S.C. §201-219.

75. Defendant C&S's policy and practice of failing to pay employees who work "off-the-clock" is specifically prohibited by 29 C.F.R. §785.11.

76. Defendants have also failed to make, keep, and preserve records with respect to Plaintiff Neary sufficient to determine his wages, hours, and other conditions and practice of employment in violation of the FLSA.

77. Defendant C&S's conduct in this regard was a violation of the FLSA.

78. As a result of Defendant C&S's unlawful acts, Plaintiff Neary is being deprived of earned wages in amounts to be determined at trial. He is entitled to recover all compensatory damages for unpaid overtime and hours worked off-the-clock, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT SIX     VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 BY PLAINTIFFS PITNEY, NAYLOR, AND NEARY ON BEHALF OF ALL OTHER SIMILARLY SITUATED INDIVIDUALS AS AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC. AND DEFENDANT PLAN

79. At all relevant times, Plaintiffs Pitney, Naylor, and Neary, as well as all similarly situated putative class members have been participants in Defendant C&S's 401k Retirement Plan.

80. As a consequence of Defendant C&S's failure to pay Plaintiffs and other class members the proper wages and overtime to which they are entitled, Plaintiffs Pitney, Naylor and Neary have lost valuable benefits in connection with the 401k Plan.

81. Specifically, the class Plaintiffs have lost the opportunity to contribute more monies to said 401k Plan, which in turn would have increased their individual account values and provided them with certain tax benefits.

82. Additionally, the class Plaintiffs have been deprived of valuable matching employer contributions which Defendants C&S and Defendant Plan would have been required to make to said Plaintiffs' respective 401k accounts.

83. By failing to pay class Plaintiffs the proper wages and overtime, Defendant C&S intended to minimize its contributions to the Defendant Plan and to prevent Plaintiffs from earning additional benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140.

84. By said acts and omissions, Defendants C&S and Defendant Plan have also breached their fiduciary duties in violation of section 404(a)(1) of ERISA, 29 U.S.C. § 1104, as enforced through section 502 of ERISA, 29 U.S.C. § 1132.

85. As a result of said actions and omissions, Plaintiffs have suffered damages. Plaintiffs are further entitled to recover all compensatory damages for lost benefits, attorneys' fees, costs, and all other remedies available at law or in equity.

COUNT SEVEN    VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ON BEHALF OF PLAINTIFF PITNEY AGAINST DEFENDANT C&S WHOLESALE GROCERS, INC. AND DEFENDANT PLAN

86. At all relevant times, Plaintiff Pitney has been a participant in Defendant C&S's 401k Retirement Plan.

87. As a consequence of Defendant C&S's failure to pay Plaintiff Pitney the proper wages and overtime to which he is entitled, Plaintiff Pitney has lost valuable benefits in connection with the 401k Plan.

88. Specifically, Plaintiff Pitney has lost the opportunity to contribute more monies to said 401k Plan, which in turn would have increased his individual account value and provided him with certain tax benefits.

89. Additionally, Plaintiff Pitney has been deprived of valuable matching employer contributions which Defendants C&S and Defendant Plan would have been required to make to his 401k account.

90. By failing to pay Plaintiff Pitney the proper wages and overtime, Defendant C&S intended to minimize its contributions to the Defendant Plan and to prevent Plaintiff Pitney from earning additional benefits, in violation of § 510 of ERISA, 29 U.S.C. § 1140.

91. By said acts and omissions, Defendants C&S and Defendant Plan have also breached their fiduciary duties in violation of section 404(a)(1) of ERISA, 29 U.S.C. § 1104, as enforced through section 502 of ERISA, 29 U.S.C. § 1132.